United States District Court
Southern District of Texas
**ENTERED**
December 06, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALYSSA WADE, | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:17-CV-1040 |
| | § | |
| | § | |
| MONTGOMERY COUNTY, TEXAS, | § | |
|     Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION ON
DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT AND PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT**

This matter was referred by United States District Judge Vanessa D. Gilmore, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #9). Defendant Montgomery County, Texas ("Defendant," "Montgomery County"), filed a motion to dismiss, under Rule 12(b)(6), for failure to state a claim upon which relief can be granted. (Docket Entry #6). In response, Plaintiff Alyssa Wade ("Plaintiff," "Wade"), filed a First Amended Complaint. (Docket Entry #10). Defendant then filed an Answer to the First Amended Complaint (Docket Entry #11, 14), and a Partial Motion to Dismiss Plaintiff's First Amended Complaint, requesting dismissal of only Plaintiff's claims that she was the victim of discrimination. (Docket Entry #11, 13). Plaintiff has responded to this motion by requesting leave to file a Second Amended Complaint. (Docket Entry # 22). Plaintiff has not filed a response to Defendant's Partial Motion to Dismiss. After considering the pleadings and the applicable law, it is **RECOMMENDED** that Defendant's Motion be **GRANTED,** and that Plaintiff's Motion for Leave to File Plaintiff's Second Amended Complaint be **GRANTED**, in part.

1

## BACKGROUND

Wade filed her Original Complaint on April 4, 2017, and her First Amended Complaint on July 26, 2017, seeking to recover for injuries she allegedly sustained while incarcerated at the Montgomery County Jail. (Docket No. 1, 10). Plaintiff alleges that, in April 2015, she was arrested by the Montgomery County Sheriff's Office, and housed at the Montgomery County Jail. (Plaintiff's First Amended Complaint at para. 20). She claims that, at the time of her incarceration, she suffered from "bipolar disorder, major depression, severe anxiety, and borderline personality disorder." (*Id.* at 18). Wade, and her boyfriend, reportedly told jail employees that she was "disabled and required special medical attention and specific medications prescribed to her." (*Id.* at 21, 22). They provided those medications to the jail employees, and Wade gave permission to contact her treating physician. (*Id.* at 27, 28). It is alleged that they also told the jail employees that Wade was suicidal. (*Id.* at 27, 28). This prompted the jail to "place[] Plaintiff in 'suicide watch,' or solitary confinement." (*Id.* at 29).

Wade alleges here that her "psychological condition" and her "suicidal condition" worsened because of that solitary confinement, and because the jail "refused to administer her prescribed medications without having an adequate reason to do so." (*Id.* at 38, 39, 35, 36). Within two weeks of being placed in solitary confinement, Plaintiff attempted suicide by hanging herself with a bedsheet. (*Id.* at 45-47). The attempt failed, but Wade fell and struck her face on the concrete floor, causing her to break her jaw. (*Id.* at 47). She required surgery to wire the jaw shut and allow healing. (*Id.* at 69-71, 75). After the surgery, she returned to the jail, but she alleges the jail employees refused to administer medication that had been prescribed for pain, and did not allow her to eat for more than a week. (*Id.* at 72-73, 55-57). She also claims that she was placed back into solitary confinement in a cold, wet, cell with no towel, blanket, sheet, or

bed, and was still refused medication for her mental illness. (*Id.* at 49-50). This allegedly led her "psychological condition" and her "suicidal condition" to worsen. (*Id.* at 52-53). The jail employees allegedly also delayed surgery to remove the wires from her jaw until the day before she was released, which prolonged her pain. (*Id.* at 75-77).

Wade lodges four causes of action against Montgomery County in her current complaint. First, she alleges that the County failed to provide adequate medical care as a condition of her confinement when it denied or delayed providing medication for her depression, anxiety, bipolar disorder, and borderline personality disorder. (*Id.* at 101). She argues that Defendant was "deliberately indifferent" to her mental disability, and that denial of her "many reasonable requests for medical treatment . . . exposed [her] to a substantial risk of pain and permanent injury." (*Id.* at 102, 103). She contends that Defendant's failure to provide adequate medical care violates her procedural due process rights and substantive due process rights, and was a cruel and unusual punishment. (*Id.* at 95). Wade next alleges that she has a constitutional right to be protected from her own suicidal actions during her confinement, but that Defendant was deliberately indifferent to the "strong likelihood that Plaintiff would attempt suicide." (*Id.* at 104-114). This also violated her procedural due process rights and substantive due process rights, and is a cruel and unusual punishment, according to her. (*Id.* at 104-114).

The focus of Defendant's motion to dismiss, however, is the two claims by Plaintiff for discrimination. Wade argues that Montgomery County discriminated against her in violation of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et. seq.* (*Id.* at 116). She alleges that she has a mental disability which caused her to be suicidal, and that Defendant knew she was disabled. (*Id*). She contends that she was entitled to reasonable accommodations because of her disability. (*Id*). She alleges that Montgomery County "assigned [her] to solitary confinement

3

because it knew she had mental health problems." (*Id.* at 116-117). She claims that, by placing her in solitary confinement and denying her basic human needs, exercise, social activity and outside contact, Defendant "arbitrarily singled her out for punishment on the basis of her mental disability." (*Id.* at 30, 116). She further insists that Defendant discriminated against her by placing her in solitary confinement knowing that it would cause her mental condition to deteriorate. (*Id.*). In addition, she alleges that the County discriminated against her by excluding her from participating in benefits and services provided to the other inmates, because of her mental disabilities. These included medical treatment, exercise and social activity. (*Id.* at 122). Finally, Plaintiff alleges that this same conduct also violates section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). (*Id.* at 132-137).

Defendant seeks dismissal, under Federal Rule of Civil Procedure 12(b)(6), of Plaintiff's claims for violations of the Americans with Disabilities Act and the Rehabilitation Act. (Defendant's Partial Motion to Dismiss at para. 1). It argues, first, that Wade has not alleged facts that establish that she "had a qualifying disability under the ADA." (*Id.* at 7-8). It further argues that Plaintiff has not alleged any facts to support her allegations that Montgomery County discriminated against her. (*Id.* at 9) ("Plaintiff fails to provide the necessary detail in her Amended Complaint about how any of the alleged actions against her were in fact discriminatory and not otherwise explainable as standard and reasonable jail practices that Plaintiff may simply not have liked . . ."). Finally, Defendant argues that Wade has not shown that any allegedly discriminatory acts were based on her disability. (*Id.* at 25). ("[Plaintiff] fails to adequately plead facts or allegations which establish even the possibility that any such acts were motivated by her disability."). Because of that, Defendant insists, Wade has failed to allege "sufficient

4

specific facts or allegations in her complaint to put [it] on notice as to what her claims are about," and should be dismissed. (*Id.* at 27).

## STANDARD OF REVIEW

A. *Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). Under the demanding strictures of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996)(*citing Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). In ruling on a motion to dismiss under Rule 12(b)(6), the court must accept the allegations as true, view them in a light most favorable to the plaintiff, and draw all inferences in her favor. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 246-47 (5th Cir. 1997). The motion must be denied unless it appears to a certainty that the plaintiff can prove no set of facts that would entitle her to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Collins*, 224 F.3d at 498. Although Rule 12(b)(6) is a powerful tool that can expedite the judicial process and excise court calendars of cases in which there are no judicially cognizable claims, it is a disfavored motion and is granted sparingly. *See Collins*, 224 F.3d at 498; *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Generally, in considering a motion to dismiss for failure to state a claim, a district court must limit its inquiry "to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

Rule 12(b)(6) motions require a two-step analysis. First, courts disregard any conclusory allegations because they are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Then, courts undertake the "context-specific" task of determining whether the remaining well-pleaded allegations give rise to an entitlement of relief to an extent that is plausible, rather than merely possible or conceivable. *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A claim has facial plausibility if the plaintiff alleges facts sufficient to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 557. The plausibility standard is not a "probability requirement," but it does demand more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Additionally, under Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [factual allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555).

A Rule 12(b)(6) dismissal is not warranted merely because the court believes that the complainant is unlikely to prevail on the merits. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* Even if it appears "almost to a certainty to the court that the facts alleged cannot be proved to support the legal claim," the suit may not be dismissed if the complaint indeed states a claim. *Mahone v. Addicks Util. Dist. of Harris County*, 836 F.2d 921, 927 (5th Cir. 1988). Dismissal is proper, however, when the complaint omits an element that is required to obtain relief. *See Blackburn v. City of Marshall, Tex.*, 42 F.3d 925, 931 (5th Cir. 1995). In weighing the sufficiency of the pleadings, it must be

emphasized that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id*.; *and see Collins*, 224 F.3d at 498.

## DISCUSSION

Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B); *United States v. Georgia*, 546 U.S. 151, 154 (2006). The ADA applies to state prisons and the provision of medical services in those prisons. See *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)(noting that "modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and which disabled prisoners could be excluded from)"). Title II authorizes suits by private citizens for money damages against public entities that violate § 12132. *See* 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794(a)).

Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Where the ADA prohibits discrimination by public entities, including private employers, "[the Rehabilitation Act] prohibits discrimination in federally-funded programs and activities." *Kemp*

*v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (citing 42 U.S.C. § 12131(1) and 29 U.S.C. § 794(a)). "The [Rehabilitation Act] and the ADA are judged under the same legal standards, and the same remedies are available under both Acts." *Kemp*, 610 F.3d at 234. Because the same legal standards apply, a plaintiff raises a viable claim under either by alleging that (1) she has a qualifying disability; (2) she has been denied the benefits of services, programs, or activities for which the public entity is responsible, or was otherwise discriminated against by the public entity; and (3) she was discriminated against by reason of her disability. *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

The predicate question in any Title II claim is whether the claimant is a "qualified individual with a disability," as defined by the ADA. *See* 42 U.S.C. § 12131(2). The term "disability" under the ADA means: "(A) a physical impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The ADA was amended in 2008 with the mandate that the statute should be construed to provide broad coverage "to the maximum extent permitted by the . . . ADA." *See, e.g., Radick v. Union Pac. Corp.*, Cause No. 4:14-CV-02075, 2016 WL 639126, at *5 (S.D. Tex. Jan. 25, 2016) (citing 29 C.F.R. § 1630.2(j)(1)(i); 42 U.S.C. § 12102(4)(B); U.S. Pub. L. 110–325, Section (a), para. 1). The Fifth Circuit has pointed out that these amendments "make it easier to prove a disability, [however,] it does not absolve a party from proving one." *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013).

The ADA defines disability to be "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual." 29 C.F.R. § 1630.2(g)(ii); 42 U.S.C. 12102(1). The Equal Employment Opportunity Commission's regulations implementing

8

the ADA provide a non-exhaustive list of "major life activities." *Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011)(citing 29 C.F.R. § 1630.2(i) (2010)). Those activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "[T]o be substantially limited means to be unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it." *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 614 (5th Cir.2009) (citing 29 C.F.R. § 1630.2(j)). To sustain a claim under the ADA, then, a plaintiff must produce evidence that she has both a mental or physical impairment, and that such impairment substantially limits a major life activity. "Neither the Supreme Court nor [the Fifth Circuit] has recognized the concept of a per se disability under the ADA, no matter how serious the impairment; the plaintiff still must adduce evidence of an impairment that has actually and substantially limited the major life activity on which he relies." *Waldrip v. General Electric Co.*, 325 F.3d 652 (5th Cir. 2003).

### *The ADA Claims should be Dismissed*

To survive this motion to dismiss, Plaintiff must "allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010). To establish a *prima facie* case for discrimination under the ADA, Wade must show that she is a qualified individual with a disability. *Blanks v. SW. Bell Communs., Inc.* 310 F.3d 398, 400 (5th Cir. 2002). She must also show that she was denied the benefits of services, programs, or activities, or otherwise discriminated against, and that the discrimination was because of her disability. *See, Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-672 (5th Cir. 2004). Because this is a motion to dismiss under Rule 12(b)(6), the inquiry is limited to the factual allegations made in Plaintiff's First Amended Complaint.

Wade has alleged that Defendant placed her in solitary confinement because of her mental health problems. (Plaintiff's Amended Complaint at 116(b)). She contends that the "Montgomery County Sheriff's Office deliberately punished [her] excessively by putting her in solitary confinement because of her disability . . . [and] treated [her] differently because of her disabilities." (*Id.* at 59-60). She insists that her mental illness was open and plainly obvious to all, and that Defendant knew that she was suffering from a life-threatening mental health crisis. (*Id.* at 116, 119(e)). Despite this knowledge, Defendant allegedly refused to administer prescribed medications, failed to provide proper medical care to her, and even returned her to solitary confinement after her suicide attempt. (*Id.* at 38, 39, 63). Plaintiff argues that Defendant's use of solitary confinement, in her case, was discriminatory, because the jail did not appropriately accommodate her mental illness, and denied her reasonable and appropriate standards of hygiene and medical care. (*Id.* at 116(h), (i)). She also claims that solitary confinement "clearly discriminates against those with mental illness because it leads to a worsening of their condition." (*Id.* at 63).

Discrimination under the ADA and Rehabilitation Act may include a defendant's failure to make reasonable accommodations to the needs of a disabled person, and reasonable accommodations can include providing medical services. *Melton v. DART*, 391 F.3d 669, 672 (5th Cir. 2004); *Georgia*, 546 U.S. at 157 ("It is quite plausible that the alleged deliberate refusal of prison officials to accommodate [plaintiff's] disability related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted exclusion from participation or denial of the benefits of the prison's services, programs or activities."); *Borum v. Swisher*, Cause No. 2:14-CV-127-J, 2014 WL 4814541 (N.D. Tex. Sept. 29, 2014) (allegations that jail failed to provide a liquid diet and fed plaintiff only honey and orange juice,

did not provide medical care necessary to treat plaintiff's disabilities, and refused to transfer him to another jail for medical treatment were sufficient to state a claim for intentional discrimination under the ADA and the Rehabilitation Act). Wade's allegation that the jail employees withheld medical treatment from her is sufficient to state a claim under the ADA and the Rehabilitation Act. Wade has further alleged that, by placing her in solitary confinement, Defendant failed to accommodate her mental illness because that condition of confinement increased the severity of her symptoms. This allegation also plausibly states a claim upon which Plaintiff could recover. *See Wright v. Texas Dept. of Criminal Justice*, Cause No. 7:13-CV-0116-O, 2013 WL 6578994 (N.D. Tex. Dec. 16, 2013)(holding that jail failed to reasonably accommodate inmate's mental disability when it placed him in a solitary cell where he was able to attempt suicide, and that was sufficient to show a prima facie violation of the ADA and Rehabilitation Act); *Lee v. Valdez*, Cause No. No. 3:07–CV–1298–D, 2009 WL 1406244 (N.D. Tex. May 20, 2009)(noting that a jail's refusal to accommodate an inmate's mental health needs constitutes an impermissible denial of benefits or services); *McCoy v. Tex. Dep't Crim. Justice*, Cause No. C-05-370, 2006 WL 2331055, at *7, n.6 (S.D. Tex. Aug. 9, 2006)("In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners."). Because these allegations "are to be taken as true," they suffice to establish both the second and third elements of a Title II claim. *Oppenheimer*, 94 F.3d at 194. A fact finder could plausibly conclude from these allegations that Defendant discriminated against Wade by denying her benefits and services due to her alleged disability, and by not accommodating that alleged disability.

Defendant argues, however, that Wade has not shown discrimination, because she has not ruled out benign explanations for her treatment. (Defendant's Motion at para. 25). ("[the complaint] does not try to make any facially plausible link between, for example, the alleged withholding of medicine and her mental disability. . . . Plaintiff makes no effort to determine whether withholding medication was because of her mental disability, because she claimed she was suicidal, or because she may have had a history of drug addiction and abuse."). Defendant also argues that "Plaintiff does not address whether the jail may have had some special cause, apart from intentional discrimination because of her disability, to withhold medications to a prisoner . . . [such as] a history of drug abuse." (Defendant's Motion at para. 24). But at this stage of the proceeding, Wade need not prove her claims, nor must she negate all potential defenses that the County may have. Wade need only allege facts that make her claim plausible. *See e.g., McCoy*, 2006 WL 2331055 (denying summary judgment and noting that the reasonableness of the requested accommodations was a question for the jury to decide).

Defendant also contends that Wade has not described "how she asked for any reasonable accommodations from Montgomery County, when and how she was refused, and most importantly, what exactly were the reasonable accommodations she believes she was entitled to from the jail. . ." (Defendant's Motion at para. 24). It is true that "the ADA's reasonable accommodation requirement usually does not apply unless triggered by a request from the [individual]." *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001). There is, however, "a balance to be struck between a disabled individual's need to request accommodations when limitations are not obvious or apparent and a public entity's duty to provide accommodations without further notice or request." *Greer v. Richardson Indep. Sch. Dist.*, 472 Fed.Appx. 287, 296 (5th Cir. 2012). "[A] disabled person's failure to expressly

12

'request' an accommodation is not fatal to an ADA claim where the defendant otherwise had knowledge of the disability and needs, but took no action." *Id.* In her First Amended Complaint, Plaintiff has alleged that she and her boyfriend informed the jail employees that she was disabled and suicidal when she was first incarcerated. She also claims that her mental illness was apparent and obvious. In addition, she provided her prescribed medication to the jail employees, gave them permission to contact her treating doctor, and allegedly "screamed" and "pleaded" for that medication to be administered. From the pleadings, Plaintiff has sufficiently alleged that Defendant knew or should have known of her need for accommodations. *See, McCoy*, 2006 WL 2331055, *8 (noting that asthmatic inmate's request for medication was a request for accommodation). Indeed, her placement in the "suicide watch" protocol tends to support the claim that Defendant was aware of her condition.

However, the predicate question remains on whether Plaintiff is a qualified person with a disability under the ADA and the Rehabilitation Act. Unless Wade is disabled, has a record of disability, or is treated as though she is disabled, the protections of the ADA and the Rehabilitation Act do not apply. 42 U.S.C. § 12102(1)(A-C). The County points out that, even though Plaintiff has alleged that she was diagnosed with bipolar disorder, major depression, severe anxiety, and borderline personality disorder, that is not sufficient to proceed, because she has not identified any major life activity that is impacted by those impairments. (Defendant's Motion at para. 23). Under the ADA and the Rehabilitation Act, Plaintiff may not merely allege that she suffers from multiple impairments; instead she must allege that those impairments are in fact disabling because they substantially limit a major life activity. *Hale v. King*, 642 F3d 492, 501-500 (5th Cir. 2011) ("Specifically, although we assume for the purposes of this decision that Hale's medical conditions constitute physical or mental impairments under the ADA, Hale has

failed to allege that his conditions substantially limited him in his performance of a major life activity."). Although the standard is a lenient one, Plaintiff must still comply with it.

Again Wade repeats that she "suffer[s] from mental disabilities that are protected under the American with Disabilities Act." (Plaintiff's Amended Complaint at para 19). She claims that the County employees knew that she was "experiencing substantial mental or physical deterioration of her ability to function independently." (*Id.* at 119(d)). She alleges that Defendant knew she was suffering from a life-threatening mental health crisis, and that the jail employees knew she was suicidal, and, in fact, placed her on suicide watch. (*Id.* at 27-29). Construing these allegations in the light most favorable to Plaintiff, she has alleged that she suffers from a mental health impairment that causes her to be potentially dangerous to herself. But allegations of suicidal risk are not sufficient, without more, to show that an impairment is disabling. *See Garza v. City of Donna*, Cause No. 7:16-CV-00558, 2017 WL 2861456 (S.D. Tex. July 5, 2017) (stating that "a person's 'risk of suicide' is not a life activity" sufficient to maintain an ADA claim); *Martin v. The Brown Schools Edu. Corp.*, Cause No. 3:02-CV-0144G, 2003 WL 21077454 (N.D. Tex. August 6, 2003) (Fish, C.J.)(noting that the plaintiff "fail[ed] to even show how being 'suicidal' translates into a perceived impairment and to designate any major life activity in which she is substantially limited by the unidentified impairment"); *Steele v. Rowles*, 2009 WL 2905903, at *10 (E.D. Tex. Sept. 3, 2009) (Crone J., adopting magistrate's recommendation) (holding that a plaintiff who expressed suicidal intent did not show that he was disabled), aff'd, 389 Fed. Appx. 347 (5th Cir. 2010) *compare with Wright v. Tex. Dept. of Criminal Justice,* 2013 WL 6578994, at *1–4 (N.D. Tex. Dec. 16, 2013) (allowing ADA claim to proceed because defendant did "not dispute that [plaintiff] was a qualified individual with a disability" because he "suffered from severe bipolar disorder and schizophrenia" that caused him

to commit suicide). Similarly, allegations of depression, without any evidence that it substantially limits a life activity, are also insufficient. *Lottinger v. Shell Oil Company,* 143 F.Supp.2d 743 (S.D. Tex. 2001) (noting that "depression . . . is not considered a disability per se" when it only occasionally affected the plaintiff's ability to sleep and eat)(*citing Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1061 (7th Cir. 2000)). Plaintiff's allegations here detail several impairments, but they do not describe how those impairments substantially limit any major life activity. For that reason, Wade has not alleged facts from which it can be reasonably inferred that she is disabled, as defined by subsection A of the ADA definition. *Hale* 642 F3d at 501-502 ("Absent allegations that [plaintiff's] ailments substantially limited him in the performance of a major life activity, [he] has failed to state a claim for relief under subsection A of the ADA's definition of disability."); 42 U.S.C. § 12102(1)(A) ("'disability' means . . . a physical or mental impairment that substantially limits one or more major life activities").

Wade has also failed to allege sufficiently that she is disabled under subsection B of the ADA's definition of disability. A plaintiff proceeding under subsection B must allege that she "has a record of an injury or impairment" and that the "impairment limited a major life activity." *Dupre v. Charter Behavioral Health Sys. Of Lafayette, Inc.*, 242 F.3d 610, 615 (5th Cir. 2001). Plaintiff claims that she was diagnosed with mental illnesses before these events, so she has alleged that she has a record of impairment. However, as noted, Wade has not alleged facts from which it can be reasonably inferred that those impairments substantially limited a major life activity. Again, for that reason, she has not alleged a necessary element to show that she is disabled under subsection B of the ADA's definition of disability.

Accepting her allegations as true, Wade has alleged facts that make it facially plausible that Defendant's actions were discriminatory to inmates disabled from mental illness. Plaintiff's

First Amended Complaint does not, however, allege facts sufficient to make it plausible that she is, in fact, disabled as that that term is defined by the ADA.[1]  For that reason, her ADA claim should be dismissed, without prejudice, to allow her to amend her Complaint, if possible, to allege facts supporting her claim that she is disabled.

### *The Rehabilitation Act Claims should be Dismissed*

Defendant moves to dismiss Plaintiff's Rehabilitation Act claim because Plaintiff has not satisfied any of the elements necessary for such a claim.  (Defendant's Motion at para. 26-27).  Montgomery County argues that Plaintiff has not established each of the necessary elements to make a Rehabilitation Act claim because she has not shown "the existence of a program within the state which receives federal financial assistance."  (Defendant's Motion at para. 26).  Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . ." 29 U.S.C. § 794(a).  To prevail on her Rehabilitation Act claim, Wade must show that Defendant receives federal financial assistance.  *Nottingham v. Richardson*, 499 Fed.Appx. 368, 376 (5th Cir. 2012) (dismissing Rehabilitation Act claim because there was no evidence that the jail received federal funds).  Plaintiff has alleged that "Defendant Montgomery County is publicly funded and the recipient of federal funding. . . ."  (Plaintiff's Amended Complaint at para. 134).  In that regard, Wade has sufficiently alleged that Defendant is a recipient of federal funds under the Rehabilitation Act.  However, because the Rehabilitation Act and the ADA

---

[1] Wade would also meet the ADA's definition of disability if she could show that she was "regarded as having a [disabling] impairment." 42 U.S.C. 12102(1)(C).  To meet this standard, Plaintiff must show either, that the jail employees mistakenly believed that she had an impairment when she did not, or allege that the jail employees mistakenly believed that her impairments were disabling, when in fact they were not.  *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 508 (5th Cir. 2003).  Because Wade insists that she has several impairments and is disabled, she cannot, and does not, argue that the County regarded her as having a disabling impairment when she did not.

apply the same legal standards, she must also allege facts that make it plausible that she has a qualifying disability. *Kemp*, 610 F.3d at 234-235 ("the relevant definition of disability set forth in the ADA is applicable to claims made under the RA"); *Hale*, 642 F.3d at 499. As explained, she has failed to do so. For the same reason that her ADA claim falls short, Plaintiff's Rehabilitation Act claim also fails and should be dismissed, without prejudice.

### *Plaintiff's Request for Leave to Amend*

"The court should freely give leave [to amend the pleadings] when justice so requires." FED. R. CIV. P. 15(a)(2). A decision on whether to permit amendment "is entrusted to the sound discretion of the district court." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993). Nevertheless, the Fifth Circuit has commented that the term "discretion" "may be misleading because FED. R. CIV. P. 15(a) evinces a bias in favor of granting leave to amend." *Mayeaux v. Louisiana Health Serv. & Indemn. Co.*, 376 F.3d 420, 425 (5th Cir. 2004)(citation omitted). "[A]bsent a 'substantial reason' such as undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party, 'the discretion of the district court is not broad enough to permit denial.'" *Id.* (citation omitted).

If a plaintiff's complaint fails to state a claim, the court should generally give her at least one chance to amend it under Rule 15(a), before dismissing the action with prejudice. *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th

17

Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.").

Plaintiff has asked to amend her complaint and has submitted a Second Amended Complaint. (Docket No. 22). Plaintiff has had at least one opportunity to cure any pleading deficiencies when she filed her First Amended Complaint, following the County's original motion to dismiss. However, Wade has not had an opportunity to respond after being alerted to the specific deficiencies in her ADA and Rehabilitation Act claims. *See generally, Hale*, 642 F.3d at 503 (remanding to allow plaintiff "opportunity to amend his Title II claim after being alerted to its deficiencies."). There is no evidence that her request for leave to amend is made in bad faith, is untimely, or will cause undue prejudice to the County. However, the amendments proposed in Wade's Second Amended Complaint are futile, because they do not cure the defects in an ADA or Rehabilitation Act claim. It is recommended, then, that Plaintiff's request to file the proposed Second Amended Complaint, attached to her Motion for Leave to File Plaintiff's Second Amended Complaint, be denied, but that she is allowed to amend her Complaint with respect to her claims for violations of the ADA and the Rehabilitation Act.

## CONCLUSION

After reviewing Plaintiff's Complaint and Defendant's Motion, it is **RECOMMENDED** that:

Defendant's Motion to Dismiss Plaintiff's Americans with Disability Act claim be **GRANTED** without prejudice;

Defendant's Motion to Dismiss Plaintiff's Rehabilitation Act claim be **GRANTED** without prejudice; and

Plaintiff be **GRANTED** Leave to Amend her Complaint, and be ordered to file any such Amendment within thirty days.

The Clerk of the Court shall send copies of the Memorandum and Recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c), General Order 02-13, S.D. Texas. Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas, 77208; copies of any such objections shall be delivered to the chambers of Vanessa D. Gilmore, Room 9513, and to the chambers of the undersigned, Room 7007.

SIGNED at Houston, Texas, this 6th day of December, 2017.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**