United States District Court
Southern District of Texas

**ENTERED**

May 21, 2018

David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ALYSSA WADE, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17-CV-1040 |
| | § | |
| MONTGOMERY COUNTY, TEXAS, | § | |
| *Defendant*. | § | |

**<u>MEMORANDUM AND RECOMMENDATION</u>**

This case is before the court on Defendant's Motion for Summary Judgment based on Plaintiff's failure to exhaust administrative remedies.[1] Having considered the parties' submissions and the law, the court recommends that the motion be denied.

**I.    <u>Background</u>**

Plaintiff Alyssa Hazel Wade was booked into Montgomery County Jail on April 8, 2015 on charges of possession of a controlled substance and theft of property under $50.00. Dkt. 30-2 at 1. On May 19, 2015, she was sentenced to one year in County jail and given deferred adjudication. Dkt. 30-2 at 2. She was released from custody on August 6, 2015. Dkt. 30 at 6. It is undisputed for purposes of the current motion that during this period of incarceration Plaintiff attempted suicide. She suffered a broken jaw in the attempt and required surgery and placement of wires in her mouth to reset her jaw.

Plaintiff complained to jail officials about her health repeatedly in July 2015. On July 6, 2015, Plaintiff requested medication for paranoia. Dkt. 32-3. Between July 22 and July 27, 2015, Plaintiff filed multiple grievances regarding removal of the wires in her mouth, bleeding, pain, and a bad smell in her mouth. Dkt. 30 at 10 (summarizing records at Dkt. 30-3). On July 30,

---

[1] The district court referred this matter to this magistrate judge for report and recommendation. Dkt. 28.

2015, jail administrators provided three responses to her grievances, finding all unfounded. One response states that it is not a medical emergency to have a smell in your mouth or bleeding gums "unless you have another underlying condition which you do not." Dkt. 30-3 at 12. Another response states that Plaintiff was seen by a dentist who provided her mouthwash to treat her gingivitis and pain medication. Dkt. 30-3 at 14. The third response notes that the dentist found no infection, and that the gingivitis she had was not due to delay in removing the wires from her mouth, but to not being able to brush below them. This response also informs Plaintiff that an appointment had been made with an outside provider to have her wires removed, but she was not given the date of the appointment. Dkt. 30-3 at 2. Plaintiff's wires were removed by an outside provider on August 5, 2015, the day before her release from custody. Dkt. 30-2 at 6. Montgomery County refused to pay for her treatment by an outside provider. *Id.*

Plaintiff's lawyer sent a demand letter to Montgomery County on February 28, 2017, seeking compensation for Plaintiff's alleged mistreatment during her April 8, 2015 – August 6, 2015 incarceration. Dkt. 32-1. According to an arrest record submitted by Montgomery County, Plaintiff was arrested again on March 30, 2017, apparently for violation of the conditions of her release from custody. Dkt. 30-2 at 7. Unaware of the arrest and faced with the possible expiration of the statute of limitations, Plaintiff's lawyer filed the current case on April 5, 2017. Plaintiff was released from Montgomery County jail on April 14, 2017. Dkt. 30-2 at 8.

## II.     Analysis

In this case, Plaintiff asserts claims against Montgomery County under 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act, based on its alleged failure to provide her needed mental health medication before her suicide attempt and resulting injury, and its failure to provide reasonable medical care thereafter. Montgomery County seeks summary

judgment on all of Plaintiff's claims on the grounds that she did not exhaust the prison grievance process as required by the Prison Litigation Reform Act (PLRA). Plaintiff responds that the PLRA does not apply to her because she was not a "prisoner" for PLRA purposes at the time of filing of this case, and because administrative remedies were not "available" to her.

### A.  Prison Litigation Reform Act (PLRA)

The purpose of the PLRA is to reduce the number of prisoner suits by weeding out claims that clearly lack merit. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). One of the ways the PLRA seeks to accomplish this goal is through a strong exhaustion provision. *Id.* at 84-85. "Under the Prison Litigation Reform Act ('PLRA'), prisoners must properly exhaust 'such remedies as are available' prior to filing a section 1983 action [or other action under federal law] concerning prison conditions."[2] *Dillon v. Rogers*, 596 F.3d 260, 265 (5th Cir. 2010) (citing 42 U.S.C. § 1997e(a)); *see also Woodford*, 548 U.S. at  85.

The exhaustion requirement is mandatory. *Woodford*, 548 U.S. at 85. "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016). But, the exhaustion requirement is not jurisdictional. *Dillon*, 596 F.3d at 271 (citing *Woodford*, 548 U.S. at 10). Exhaustion is an affirmative defense on which the Defendant bears the burden of proof. *Dillon*, 596 F.3d at 266. Where necessary, such as when the availability of administrative remedies is contested, the court may be required to resolve factual disputes in order to resolve the threshold exhaustion question. *Id.* at 271-73 and n.4. Dismissal on summary judgment for failure to exhaust administrative remedies should be without prejudice. *Id.* at 272; *Abbott v. Babin*, 587 Fed. App'x 116, 118 (5th Cir. 2014) ("After concluding that summary judgment was proper, the district court dismissed Abbott's claim without prejudice. We agree that is was proper

---

[2] There is no dispute that all of Plaintiff's claims relate to "prison conditions" for purposes of the PLRA.

to dismiss, and to do so without prejudice."); *Springer v. Rekoff*, Civil Action No. 3:14cv300, 2017 WL 2105433 * 5 (S.D. Tex. May 12, 2017) ("Even if the defendants succeeded in their push for a dismissal on failure-to-exhaust grounds, they would only get a dismissal without prejudice so that Springer could pursue the appellate remedy, and limitations would be tolled.").

### B.  Wade was a prisoner subject to the PLRA on the day this case was filed.

The PLRA applies to "a prisoner confined in any jail, prison, or other correctional facility." 42 U.S.C.A. § 1997e(a). "As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C.A. § 1997e(h). It is Plaintiff's status on the day her suit was filed that determines the applicability of the PLRA exhaustion requirement. *Duvall v. Dallas Cty., Tx.,* Civil Action No. 3:05-CV-2431, 2006 WL 3487024 *2 (Dec. 1, 2006). Furthermore, Plaintiff is not excused from exhausting claims related to events that occurred during a prior incarceration, even though she would not be subject to the exhaustion requirement at all had she not been in jail at the time her case was filed. *Id.*

Plaintiff contends that Defendant has not shown that as of April 5, 2017, the day this suit was filed, Plaintiff had been taken before a judicial officer and officially detained. Plaintiff cites *Roach v. Bandera Cty.*, No. Civ. A. SA-02-CA-106, 2004 WL 1304952 *5 (W.D. Tex. June 9, 2004) for the proposition that a person held in jail who has not been brought before a judicial officer is not a prisoner for purposes of the PLRA's exhaustion requirement. In *Roach*, the court concluded that the PLRA exhaustion requirement did not apply to plaintiff's claim that he was a victim of excessive force upon arrival at the jail while being walked to his cell.

*Roach* is not controlling here. First, in *Roach* the issue was whether his Fourth Amendment excessive force complaint concerned "prison conditions."[3] *Id.* Second, nothing in *Roach* establishes being brought before a judicial officer as the definitive point at which an arrestee becomes a prisoner for purposes of the PLRA. The court noted Fifth Circuit precedent holding that an arrestee becomes a pretrial detainee for purposes of triggering due process, rather than Fourth Amendment, rights "after he is arrested, processed by the police department, and has spent[] significant periods of time in detention." Yet, the focus for purposes of determining the applicability of the PLRA in the case before it, the *Roach* court focused on the fact that Roach was not yet "confined or detained" in the jail at the time of the alleged excessive force. *See* 2004 WL 1304952, at *5.

Here, Plaintiff was clearly in the custody of the jail on April 5, 2017.[4] Defendant has presented the affidavit of Philip Schumpe, a Lieutenant with the Montgomery County Sheriff's Office overseeing the jail, attesting that Plaintiff "was in custody of the Montgomery County Jail on April 5, 2017." Dkt. 30-4. The court concludes Plaintiff was a prisoner subject to the PLRA at the time this suit was filed on April 5, 2017.

## C. Availability of administrative remedies.

### 1. Montgomery County Inmate Grievance Plan.

Proper exhaustion is determined by reference to the applicable grievance procedures. *See Patterson v. Stanley*, 547 Fed. App.'x 510, 511 (5th Cir. 2013); *Cowart v. Erwin*, 837 F.3d 444,

---

[3] The court easily found, without a discussion of when Roach was brought before a judicial officer, that "because Plaintiff was a person detained in a facility" the PLRA was applicable to any of his claims "that concern prison conditions" and thus Roach was required to exhaust all administrative remedies before pursuing his Eighth Amendment cruel and unusual punishment claims. *Id.* at *2.

[4] Contrary to Plaintiff's assertion in her brief that she was arrested on April 4, 2017, prison records show that Plaintiff was arrested on March 30, 2017. Dkt. 30-2 at 7. Plaintiff has submitted no evidence to support the April 4, 2017 arrest date. To the extent this presents a fact issue, it is not dispositive because it is undisputed that she was in custody on the date this lawsuit was filed.

451 (5th Cir. 2016) ("The prison's grievance procedures, and not the PLRA, define the remedies that are available and must thus be exhausted."). Defendant has submitted a single page with the paragraph heading "Channels of Communications" that it identifies as the "Montgomery County Jail inmate grievance plan." That plan states as follows:

> If you have a grievance, complete a grievance form and place it in a sealed envelope. The sealed grievance is given to the Mail Officer who will forward it to the Grievance Officer. The Grievance Board will review and if necessary investigate your grievance. The Board will issue you a written reply within 15 days. If you are not satisfied with the Board's decision, you may file an appeal with the Jail Administrator. If you are not satisfied with the Jail Administrator's decision, you may appeal to the Sheriff of Montgomery County. The Sheriff's decision is final.
>
> In the event of an emergency grievance where delay could jeopardize life, health, or physical injury, you should notify the Shift Supervisor. All grievances will be recorded and investigated and if necessary, corrective action will be taken.

Dkt. 30-1. The plan contains no deadlines for filing a grievance or for filing an appeal. The plan contains no instructions for filing an appeal, either with the Jail Administrator or the Sheriff. Appeal forms were not provided to inmates, although small print on the grievance response form says that an inmate should submit a plain piece of paper titled "Grievance Appeal" to the jail administrator. Dkt. 30-3 at 2. Contrary to the paragraph above, the grievance response form says that the decision of the jail administrator is final and does not mention the availability of further appeal to the sheriff. *Id.* Despite these flaws, Montgomery County has met its burden to show that it does have some form of administrative process for remedying prisoner grievances. *See McGilbert v. Montgomery Cty. Sheriff's Dept.*, Civil Action No. H-11-3105, 2013 WL 655706 *3 (S.D. Tex. Feb. 20, 2013) ("the Montgomery County Jail Inmate Grievance Plan has a two-step grievance process . . . "). Therefore, the court will address whether this process provided an available administrative remedy for Plaintiff's claims.

**2.   Availability of Administrative Remedy to Plaintiff.**

The Fifth Circuit recognizes that even where an administrative process is in place, administrative remedies nonetheless may be personally unavailable to a prisoner. *See Days v. Johnson*, 322 F.3d 863, 867 (5th Cir. 2003) ("this Court [has] implicitly (at least) indicated that one's personal inability to access the grievance system could render the system unavailable"), *overruled by implication on other grounds by Jones v. Bock,* 549 U.S. 199, 216 (2007); *see Gabby v. Meyer*, 390 F. Supp. 2d 801, 803-04 (E.D. Wisc. 2005) (recognizing that an administrative remedy may be unavailable because there is no redress that can be provided; because prison officials prevent an inmate from making use of the administrative process; or because the prisoner's medical condition renders him unable to exercise his right to the process).

> Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. And that limitation on an inmate's duty to exhaust . . . has real content. . . . Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'

*Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (citations omitted). There are several factors in this case that rendered administrative remedies unavailable to Plaintiff during the relevant time frame.

**a.   Relevant time frame for assessing availability.**

The court must assess the availability of an administrative remedy during the period allowed for filing a grievance under the applicable grievance plan. For example, in *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016), the applicable grievance process required Hernandez to file a grievance within 15 days of the alleged incident. In determining whether Hernandez had an available administrative remedy, the court looked at the facts existing during the 15 day filing

window. Because Hernandez did not know about the grievance process during this period, exhaustion was excused. In *Dillon*, 596 F.3d at 267–68, the court addressed whether an administrative remedy was available to Dillon after his transfer from the facility where the alleged wrongful incident occurred:

> The district court did not address whether any administrative remedies were available to Dillon at Jena [the first facility where he was held], instead focusing its analysis on whether remedies were available at Allen [the facility to which he was transferred]. We agree with the district court that the focus should be on availability at Allen—if remedies were available to Dillon at Allen, their unavailability at Jena would not suffice to excuse his failure to exhaust. . . . If impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, *unless there are other problems at the new facility.*

*Id.* (emphasis added)).

In this case, there is no deadline for filing a grievance under Defendant's inmate grievance plan. Dkt. 30-1 at 1. Plaintiff's time for filing a grievance had not yet expired upon her release from custody on August 6, 2015. Thereafter, until March 30, 2017, Plaintiff had no need or ability to exhaust her administrative remedies because she was not a prisoner. Under these circumstances, Plaintiff should not be precluded from pursuing her claims because she did not exhaust her remedies prior to March 30, 2017. *See White v. Bukowski*, 800 F.3d 392, 397 (7th Cir. 2015) ("Uniformed about any deadline for filing a grievance—not told that her transfer date would be the deadline or when that transfer date might be—the plaintiff cannot be faulted for not having filed a grievance before she was transferred from the jail for good.").

As discussed below, the court finds that administrative remedies were not available to Plaintiff during her second period of incarceration with respect to either of her allegations of misconduct—first, the failure to provide her medication leading up to the suicide attempt, and second her medical treatment for injuries sustained in the suicide attempt.

**b.  Failure to provide medication before Plaintiff's suicide attempt.**

It is undisputed that Plaintiff never filed a grievance related to Defendant's failure to provide her with her medication prior to her suicide attempt, although she did file a request for mental health medication on July 22, 2015. Nonetheless, the court finds that Plaintiff's lack of exhaustion is excused for a few reasons.

First, Plaintiff was not in jail long enough to take advantage of administrative remedies even if she knew about them. *See Lopez v. City of New York*, No. 05 Civ. 10321, 2009 WL 229956 *4 (S.D.N.Y. Jan. 30, 2009). Had Plaintiff filed a grievance after her arrest on March 30, 2017, Defendant would have had 15 days to respond, and then Plaintiff would have an undefined period of time to appeal. Dkt. 30-1. Plaintiff was released on April 14, 2017, only 15 days after her arrest. It is not reasonable to expect her to completely exhaust her administrative remedies during this brief period of incarceration.

Moreover, Defendant has not met its burden to show that Plaintiff was in fact aware of her administrative remedies in 2017. The Fifth Circuit has "long recognized the importance of ensuring that inmates have avenues for discovering the procedural rules governing their grievances." *Dillon,* 596 F.3d at 268; *see White v. Bukowski*, 800 F.3d 392, 397 (7th Cir. 2015) ("Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about."). Defendant contends that Plaintiff was aware of its grievance plan because she signed an acknowledgement of receipt of the Montgomery County Detention Facility Inmate Handbook in April 2015. However, Lt. Schumpe's affidavit does not establish that the "channels of communication" paragraph, (Dkt. 30-1), which Defendant identifies as its inmate grievance plan, was actually a part of the inmate handbook that Lt.

Schumpe says was provided to Plaintiff in 2015. Moreover, despite Lt. Schumpe's opinion that Plaintiff should have known about the grievance procedures from prior incarcerations, there is no justification for making such an unsupported inference. *See Aponte v.* Armstrong, 137 Fed. App'x 414, 417 (2nd Cir. 2005) (rejecting prison's contention that plaintiff was on constructive notice of the prison's grievance procedures based on prior brief possession of the inmate manual). Based on the current record, the court concludes that Defendant has not met its burden to establish that Plaintiff was informed of the grievance procedures adequately to allow her to properly exhaust them. *See Dillon*, 596 F.3d at 269 ("there is not enough evidence in the record concerning what Dillon knew or could have discovered about the ARP system for us to determine whether [prison officials'] alleged statements made remedies unavailable.").

Finally, Plaintiff was not obligated to exhaust this claim because in 2017 jail officials had no authority to do anything that could remedy her complaint. While a prisoner must exhaust administrative remedies even where monetary damages cannot be granted by the administrative process, exhaustion is required only where there is some action Defendant can take in response to the prisoner's complaint. *Booth v. Churner*, 532 U.S. 731, 738 (2001)(the modifier "available" requires "the possibility of some relief for the action complained of"). The Seventh Circuit gave an example of an unavailable remedy in *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 538 (7th Cir. 1999):

> Suppose the prisoner breaks his leg and claims delay in setting the bone is cruel and unusual punishment. If the injury has healed by the time suit begins, nothing other than damages could be a 'remedy,' and if the administrative process cannot provide compensation then there is no administrative remedy to exhaust.

Similarly, in *White v. Bukowski*, 800 F.3d 392, 395 (7th Cir. 2015), a prisoner who claimed that inadequate medical care in jail lead to her baby's birth defects had no remedy that was within the power of the jail to grant for the baby's birth defects and thus had no available

administrative remedy to exhaust. In this case, there was no remedy available to Plaintiff because there was nothing jail officials could do to two years after the incident at issue to address the failure to provide her medication before her suicide attempt.

For the above reasons, the court concludes that under the facts of this case Plaintiff's claim is not barred due to failure to exhaust her administrative remedies and recommends that Defendant's motion for summary judgment be denied.[5]

### c.   Failure to provide adequate medical care for Plaintiff's mouth problems.

Plaintiff filed numerous grievances in July 2015 relating to the condition of her mouth. It is undisputed that she did not appeal the jail's July 30, 2015 responses to her grievances.[6] Plaintiff is excused from exhausting her remedies on this claim for the same reasons as discussed above, as well as for the additional reason that there was no reason for her to appeal Defendant's responses to her 2015 grievances.[7]

Defendant responded to Plaintiff's multiple July 2015 grievances on July 30, 2015. A surgeon removed the wires from her mouth on August 5, 2015. She was released from custody on August 6, 2015. Despite the delay, and despite finding her grievances unfounded, Defendant

---

[5] Administrative remedies also are unavailable when the prisoner's health or conditions of confinement, or the actions of prison officials, prevented compliance with the administrative process. *Days*, 322 F.3d at 867 (prisoner unable to file timely grievance due to broken hand); *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011) ("a remedy is not 'available' within the meaning of the Prison Litigation Reform Act to a person physically unable to pursue it."). There may be fact questions regarding whether Plaintiff's health or lack of resources prevented exhaustion of remedies. However, because other grounds are established on this record the court need not resolve this issue to deny summary judgment.

[6] As noted above, administrative remedies were unavailable to Plaintiff because she was not in jail long enough to take advantage of them. *See Lopez v. City of New York*, No. 05 Civ. 10321, 2009 WL 229956 *4 (S.D.N.Y. Jan. 30, 2009). There was no time to file an appeal before she was released, either in 2015 or 2017, and after her release she was no longer required to exhaust her administrative remedies.

[7] There is also some doubt as to whether the appeal process was actually available to Plaintiff. Defendant provided grievance forms to inmates, and Plaintiff took advantage of those forms. But Plaintiff swears that at the time she did so she did not understand what the word "appeal" means, and thought her only recourse was to keep filing grievance forms. Dkt. 32-2. Nothing in the grievance plan or on the grievance form informs an inmate who the "jail administrator" is or how or where to submit an appeal to the jail administrator. And, as noted above, there is some discrepancy in the evidence as to whether any appeal from the jail administrator's decision was possible. Where the appeal process is so poorly articulated that a prisoner cannot really determine what is necessary, it is not an available remedy. *See Springer*, 2017 WL 2105433 at *1.

ultimately provided Plaintiff with her requested relief. Thus, she was not required to file an appeal. *Rosa v. Littles*, 336 Fed. App'x 424, 427 (5th Cir. 2009) (the PLRA requires a prisoner who seeks money damages to exhaust administrative remedies "as long as the grievance tribunal has the authority to take some responsive action."). *Patterson*, 547 Fed. App'x at 513; *Rosa v. Littles*, 336 Fed. App'x 424, 428-29 (5th Cir. 2009) (a prisoner need not complete all steps of the grievance procedure if at any stage he receives favorable relief). By 2017, Plaintiff's injuries were healed and no further treatment was necessary. The court concludes that Plaintiff's claim is not barred by the failure to exhaust her administrative remedies.

### III.   Conclusion and Recommendation

For the reasons stated above, the court recommends that Defendants' Motion for Summary Judgment be **DENIED**.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Vanessa D. Gilmore, Room 9513, and to the chambers of the undersigned, Room 8608.

Signed at Houston, Texas, on May 21, 2018.

Christina A. Bryan
United States Magistrate Judge